## 18784

Ralph REYNOLDS, Administrator of the Estate of Francis M. Arant, Respondent, v. WABASH LIFE INSURANCE COMPANY, Appellant.

(161 S. E. (2d) 168)

166

*Messrs. Lightsey & Bowers,* of Columbia, *for Appellant,*

*Messrs. Herbert, Dial & Windham,* of Columbia, *for Respondent,*

April 29, 1968.

LITTLEJOHN, Justice:

Defendant issued its policy of hospital and surgical expense insurance to the plaintiff's intestate on September 11, 1964. On March 2, 1965, less than six months after its effective date, the insured died because of a ruptured abdominal aorta after one day of hospitalization.

This action was brought to enforce the policy. Defendant-insurer had refused to pay, alleging that because of the exceptions and limitations in the policy, no benefits were due and owing. The policy provides, under "Exceptions and Limitations", that it does not cover "hospitalization due to cardio-vascular disease, * * *. unless such cause occur after the policy has been maintained in continuous force for six (6) months from date of issue."

The plaintiff maintains that the insured did not have "cardio-vascular disease", but merely had vascular disease with no cardio disease whatever. The plaintiff thus maintains that the six months limitation does not bar recovery since the exception and limitation relate to cardio-vascular disease which must be present in combination. The policy makes no reference to disease of the cardio-vascular system; the exact phrase used in the policy is "cardio-vascular disease."

The lower court found that the policy was in effect and found that the limitations did not apply. The first question which the insurer raises by this appeal is whether the lower court was correct in interpreting *cardio-vascular* disease as though it were *cardio and vascular* disease.

The plaintiff presented Dr. John R. Welsh of the faculty of the University of South Carolina who qualified as an expert in the field of English grammar. He testified that the hyphen is similar in effect to supplying the conjunction *and* and that the hyphen eleminates any suggestion of the conjunction *or*. The hyphen between the two words, *cardio*

and *vascular,* construed as *and* brings about the construction urged by the plaintiff.

There is abundant evidence from the surgeon who attended the insured prior to his death to warrant the conclusion that there was no cardio disease, and that the ruptured abdominal aneurysm was a vascular disease involving only the blood vessels.

There is also medical testimony of a practicing physician who testified that the term *cardio-vascular disease* included aortic aneurysm.

It becomes the duty of this court to construe the policy. In construing an insurance policy such as this, certain principles are well established. See *Walker v. Commercial Casualty Insurance Co.,* 191 S. C. 187, 4 S. E. (2d) 248, where it is said that insurance contracts which are in any respect ambiguous or capable of two meanings must be construed in favor of the insured. Suffice it to say that this contract was capable of two meanings, and the lower court was justified in construing it in favor of the insured. We hold the insurer bound to. pay according to the terms of the policy.

After holding that the exceptions and limitations did not apply, the trial judge awarded the plaintiff $618.55.

By proper exceptions, the insurer challenges the trial court's determination of the benefits due under the policy provisions Part I, Part II, and Part V. Part I and Part II are related and the relevant parts of each follow. Part V will be discussed separately.

Part I of the policy is entitled "Daily Hospital Benefits" and it reads:

"When by reason of such injury or such sickness as described in the Insuring Clause herein, any member of the Family Group shall be necessarily confined in a licensed hospital, the Company will pay to the Insured the expense actually incurred, if any, not exceeding the rate per day as shown in the specified application herefor for the period the

member of the Family Group shall necessarily be a resident patient * * *." [The application shows a rate of Eight ($8.00) Dollars per day.]

Part II of the policy is entitled "Additional Hospital Expense Benefits" and is quoted as follows:

"If the daily hospital confinement benefits are payable as provided in Part I, the Company, in addition to such benefits, will pay the actual fees charged by a hospital for necessary services and supplies including ambulance service to and from the hospital furnished any member of the Family Group, provided however, that the total amount payable under this Part II with respect to all hospital confinement of any member of the Family Group for any one injury or sickness shall not exceed the maximum determined from the following table:'

## MAXIMUM BENEFIT UNDER
## PART II

"Total Number of Days of Hospital Confinement

"1 Day ............. 4 times the Rate per Day Shown in the Specified Application."

The trial court construed Parts I and II to entitle the plaintiff to recover $369.05 actual hospital expense, plus $17.50 ambulance fee, plus $32.00 representing four times the daily rate of $8.00 shown in the application. We think the lower court misconstrued the terms of these two sections. The provisions of Part I quoted above provide that: "The Company will pay to the Insured the expense actually incurred, if any, not exceeding the rate per day as shown in the specified application * * *." The rate shown in the application is admittedly $8.00 per day, and accordingly the extent of the benefit payable under Part I is $8.00 since there was only one day of hospitalization.

Part II quoted above provides for benefits over and above those set out in Part I; however, such additional benefits are limited by a proviso which states that the amount pay-

able under Part II shall not exceed four times the daily rate (of $8.00) shown in the application. Accordingly, the extent of the benefits payable under Part II is limited to four times $8.00 or a total of $32.00.

Both parties are bound by the terms of the contract. The lower court did not find these two provisions ambiguous and we are of the opinion that the same are not ambiguous. The lower court should have held that a total of $40.00 is payable under these two parts of the contract.

Part V of the policy agrees to pay to the insured scheduled amounts for designated surgical operations. Many operations are enumerated and the amount payable for each is set out. No fee is provided for an operation for a ruptured abdominal aorta. The policy does however provide that, "for any operation not specified in this Schedule, the Company will pay the fee provided in the Schedule for an operation of comparable severity."

The lower court found in effect that the operation here involved was comparable to one for removal of a brain tumor and/or cutting into the cranial cavity, for each of which the policy specifies a fee of $200.00. By exception the insurer challenges this holding and submits that a fee in the amount of $75.00 only was proper.

It must be conceded that the operation performed is a most delicate and difficult one and we think the evidence justified the lower court's finding that such was comparable in severity to the other operations scheduled, for which a fee in the amount of $200.00 is indicated.

We conclude that the lower court was correct in finding for the plaintiff. The award should have been limited to a total of $240.00, and accordingly, judgment shall be entered for the plaintiff in that amount and the lower court is

Affirmed with modification.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.