Edward E. BRYAN, Plaintiff–Appellee,

v.

HALL CHEMICAL COMPANY,
Defendant–Appellant.

No. 93–8034.

United States Court of Appeals,
Eleventh Circuit.

June 21, 1993.

William A. Clineburg, Jr., Michael W. Johnston, Suzanne C. Auclair, Atlanta, GA, for defendant-appellant.

Griffin Bell, Jr., Fisher & Phillips, Atlanta, GA, for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and ATKINS*, Senior District Judge.

HATCHETT, Circuit Judge:

In this case arising out of the district court's granting of a preliminary injunction in favor of the appellee, Edward E. Bryan, a former employee of the appellant, The Hall Chemical Company, we affirm the district court's order, vacate the suspension of the injunction pending appeal, and reinstate the preliminary injunction.

## FACTS

The Hall Chemical Company (Hall) is an Ohio corporation with its headquarters and principal place of business in Ohio. Hall manufactures inorganic and organic salts termed commodity chemical products. Edward E. Bryan is a chemist with a bachelor's and a master's degree in chemistry, who began employment with Hall in November, 1983. Prior to his employment with Hall, Bryan worked in the chemicals industry for twenty-three years beginning in 1960 as a research chemist. Bryan also has extensive experience in sales and marketing of catalysts to the petrochemical, petroleum refining, and oil industries. He worked in metal refining and nickel and cobalt reclamation. In 1983, Hall hired Bryan to work on an inorganic metal reclamation project which ultimately failed. Bryan also had sales respon-

sibilities for Hall in the southeast region of the United States. In 1986, Bryan began full-time sales as domestic sales manager for Hall. Thereafter, Bryan received a $5,000 raise, as reflected on Hall's payroll change form dated December 22, 1986. Hall also promoted Bryan to vice president of sales-North America, advising Bryan of this by letter dated December 29, 1986.

On January 14, 1987, Bryan signed Hall's standard noncompete and nondisclosure agreement (agreement), restricting Bryan's employment during and after employment with Hall. Paragraph 3 of the agreement provides for restrictions upon Bryan's conduct, and reads, in pertinent part, as follows:

During the period of the Employee's employment with the Company and for a period of two years after termination of the Employee's employment with the Company, Employee will not directly or indirectly:

(1) with respect to any product now or hereafter (during the term of his employment) manufactured or sold by the Company or which is competitive with any such product, call upon or solicit business from, directly or indirectly, without the Company's written consent, any customer or supplier of the Company with which the Company did business while the Employee was employed by the Company, or become employed by or in any way directly or indirectly render services to any person, firm, or corporation engaged in the manufacture and/or sale of any such products, or

(2) attempt in any way to secure for himself or another, profit, employment or any other advantage by the use, exploitation, sale, disclosure or implementation of any confidential or proprietary information belonging to the Company or the knowledge of which Employee acquired in the course of and during the term of Employee's employment with the Company (including the information described in paragraph 4).

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

In 1988, Hall merged with a subsidiary of Goldman Financial Group, Inc. Although Goldman Financial Group requested the officers and directors of Hall to sign resignation letters, the merger did not disrupt Bryan's position with Hall, and he remained a vice president with no disruption or change in pay or benefits.

In May, 1992, Hall promoted Bryan's subordinate, Edward Stasen, to Bryan's position as vice president of sales and marketing, demoting Bryan to vice president of southern sales. In August, 1992, The Shepherd Chemical Company (Shepherd), one of Hall's two primary domestic competitors, offered Bryan employment in sales and marketing development. On August 24, 1992, while still a Hall vice president, Bryan accepted Shepherd's offer of employment to begin working at Shepherd on September 14, 1992.

Hall's strategic planning meeting began on the evening of August 31, 1992. Twenty to twenty-five of Hall's managers and key employees attended this meeting, though Hall's chief executive officer did not attend. Although Bryan attended the August 31 and September 1 meetings, Stasen, Bryan's supervisor at the time, testified that he convinced Bryan to attend, but Bryan did not want to do so. At the end of the planning meeting on September 1, Bryan resigned in the presence of Hall management. Bryan then began work as scheduled at Shepherd, with his place of employment remaining in Marietta, Georgia, where he and his family lived. During employment with Hall, Hall maintained Bryan's office at his residence in Marietta.

On October 7, 1992, Bryan received a letter from counsel for Hall stating that Bryan must cease his employment with Shepherd, pursuant to the agreement. Hall's counsel also sent a similar letter to Shepherd's president, referencing Bryan's agreement with Hall and informing Shepherd that Hall intended to enforce the agreement. Shepherd thereafter discussed the matter with Bryan and concluded that Bryan should cease rendering services to Shepherd. Bryan's employment with Shepherd ended on October 19, 1992.

## PROCEDURAL HISTORY

Bryan filed this lawsuit on November 6, 1992, seeking a declaratory judgment and injunctive relief to prevent enforcement of the agreement arising out of his employment with Hall. Bryan also sought, pursuant to Federal Rule of Civil Procedure 65, a temporary restraining order and a preliminary injunction enjoining Hall from attempting to enforce the agreement. On November 6, 1992, the district court temporarily restrained Hall from taking any action to enforce the agreement. Thereafter, the parties filed briefs in support of their positions, and the district court held numerous hearings as to Bryan's motion for a preliminary injunction. On December 30, 1992, the district court issued its order granting Bryan a preliminary injunction enjoining Hall from attempting to enforce any of the restrictive covenants contained in the agreement until further order of the district court. The district court found that Ohio law applied to the agreement at issue under this court's reasoning in *Nordson Corp. v. Plasschaert*, 674 F.2d 1371 (11th Cir.1982).

Based on the court's finding that Hall did not give any consideration for Bryan's execution of the agreement, the court concluded that Bryan met the first prerequisite for obtaining a preliminary injunction—that a substantial likelihood existed that he would prevail on the merits of his claim. The district court reasoned that Ohio law considers a restrictive covenant agreement void "for want of consideration where it was not included in the original contract of employment, but in a subsequent contract for continuance of employment and was strictly for the protection of the employer." *Cohen & Co. v. Messina*, 24 Ohio App.3d 22, 492 N.E.2d 867, 871 (1985). The district court determined that if Hall enforced the agreement, "the plaintiff [Bryan] would be virtually unemployable in the industry in which he has spent most of his life." Based on this finding, the district court concluded that enforcement of the agreement would result in irreparable injury to Bryan because of his inability to work in his chosen field. The district court found that Hall possessed "few, if any, true trade secrets in the indus-

try...." Thus, the court held that the threatened injury to Bryan if Hall enforced the agreement outweighed the threatened harm to Hall if the court granted the preliminary injunction. The district court finally found that ordering a preliminary injunction enjoining enforcement of the agreement would not disserve any public interest.

Based on these findings, the district court issued its order granting a preliminary injunction enjoining Hall from enforcing the agreement. On January 8, 1993, Hall appealed the district court's order and requested this court to suspend the preliminary injunction pending appeal. On February 5, 1993, this court granted Hall's motion and suspended the injunction pending appeal.

## CONTENTIONS

Hall contends that the district court's issuance of the preliminary injunction contradicts principles of equity and is an abuse of the district court's discretion. Hall contends that Bryan did not come into court with clean hands, and therefore, the district court's granting Bryan equitable relief in the form of a preliminary injunction violated the clean hands doctrine. Hall also contends that the district court's findings that Hall possessed few, if any, true trade secrets and that Hall did not give consideration for Bryan's execution of the agreement were clearly erroneous. Hall also contends that the district court abused its discretion in limiting Hall's cross-examination of one of Bryan's witnesses. Bryan contends that the district court properly granted his motion for a preliminary injunction, the district court did not abuse its discretion, and its findings were not clearly erroneous.

## ISSUES

This appeal involves the following issues: (1) whether the district court erred in determining that Ohio law governed the dispute; (2) whether Bryan's activities prior to resigning from Hall precluded equitable relief; (3) whether the district court abused its discretion in granting the preliminary injunction; and (4) whether the district court abused its discretion during Hall's cross-examination of one of Bryan's witnesses.

## DISCUSSION

### I. CHOICE OF LAW

A preliminary issue is whether the district court's determination that Ohio law governs the agreement is error. Bryan contends that Georgia law should govern. The parties chose Ohio law to govern the agreement. Because Bryan brought this diversity lawsuit in district court in Georgia, we follow Georgia's conflict of law rules to determine which state's law applies. *Nordson Corp. v. Plasschaert*, 674 F.2d 1371 (11th Cir.1982) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). "[A] federal court sitting in diversity should, whenever possible, reach the same result as the state court would reach in deciding the identical issue." *Goodwin v. George Fischer Foundry Systems, Inc.*, 769 F.2d 708, 711 (11th Cir.1985). Georgia will honor choice of law provisions unless no reasonable basis exists for doing so or, application of the chosen state's law is contrary to a fundamental policy of Georgia which has a materially greater interest in the issue than the chosen state. *Nordson*, 674 F.2d at 1374–75 (citing *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368 (1977)). Since Hall is an Ohio corporation headquartered in Ohio, a reasonable basis exists for choosing Ohio law. *See Nordson*, 674 F.2d at 1375.

Under Georgia law, employee restriction contracts such as the one at issue are subject to great scrutiny and probably unenforceable. *E.g., Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265 (1977). Bryan fails, however, to address on appeal whether application of Ohio law will contravene Georgia fundamental policy. Moreover, the district court's finding that Georgia does not have a "materially greater interest" than Ohio in the determination of this issue is not clearly erroneous. The only contact Georgia has with this case is that Bryan resides in Georgia. Thus, we hold that the district court's determination that Ohio law governs is not error. *See Nordson*, 674 F.2d at 1375.

### II. UNCLEAN HANDS

The district court did not err in failing to rule for Hall regarding its unclean

hands defense. Hall contends that because Bryan attended Hall's strategic planning meeting as a "spy" for Shepherd (after accepting a job offer with Shepherd), he cannot seek equitable relief. This contention is meritless. Although the district court did not set forth its grounds for rejecting this argument, this court should affirm when the reasons for the decision are readily apparent. *Grant v. Seminole County, Florida,* 817 F.2d 731, 732 (11th Cir.1987).

■ Testimony established that Bryan worked faithfully and diligently for Hall; that Bryan did not desire to go to the meeting, but Hall's employee, Stasen, urged and convinced Bryan to go. Moreover, this meeting was a multi-day event, and if Bryan had been a Shepherd's spy, he would have postponed his resignation and continued attending the meetings, gaining additional information. The evidence fails to demonstrate unclean hands.

## III. PRELIMINARY INJUNCTION

The grant of a preliminary injunction "is a matter within the discretion of the district court, reviewable only for abuse of discretion or if contrary to some rule of equity." *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983). The preliminary injunction is an "extraordinary and drastic remedy" not grantable unless the movant "clearly carries the burden of persuasion" as to the following four prerequisites: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs the threatened harm the proposed injunction may cause to the opposing party; and (4) that the injunction, if issued, will not disserve the public interest. *Jefferson County,* 720 F.2d at 1519. We hold that Bryan carried the burden as to all four requirements.

### A. Likelihood of Success on the Merits

■ The district court held that Bryan established his likelihood of success on the merits of his claim that the agreement is void, based on the court's finding that Hall did not give consideration for Bryan's signing of the agreement. Hall contends this finding is clearly erroneous. Hall reasons that because Bryan's raise and promotion occurred at approximately the same time as Bryan's signing of the agreement, an inference exists that the raise and promotion were consideration for the agreement. Hall asserts that Bryan's promotion supports this inference because the promotion gave him access for the first time to Hall's confidential information and trade secrets.

The record supports the district court's finding. Bryan received the raise on December 22, 1986. Hall sent its promotion notice to Bryan on December 29, 1986. Although Bryan's signing of the agreement on January 14, 1987, is in close proximity to these dates, the testimony is sufficient for a finding of coincidence. Carl Cross, former vice president and board member for Hall, testified that he recommended to the Hall board in writing that Bryan receive a raise and promotion in recognition of his past efforts. Cross testified that the board unanimously agreed that Bryan merited the raise and promotion, and that the board did not discuss the agreement in relation to the merit-based raise and promotion. Cross further testified that the raise and promotion had nothing to do with the agreement. Bryan testified that no one told him that his raise and promotion were consideration for the agreement, and that discussions of his raise and promotion began back in September, 1986. The witness to the agreement, Haskell, employee for Hall, did not testify. Based on the above, the district court's finding that Bryan's raise and promotion were not consideration for the agreement is not clearly erroneous. And, under Ohio law, a restrictive employment contract without consideration is void. *Cohen & Co. v. Messina,* 24 Ohio App.3d 22, 492 N.E.2d 867, 871 (1985). Therefore, we hold that Bryan established a likelihood of success on the merits of his claim.

### B. Irreparable Injury

Hall does not dispute the district court's finding that if Hall enforces the agreement, Bryan will suffer irreparable injury. Nevertheless, the district court's finding is not clearly erroneous. The agreement is "exceptionally broad" in restricting Bryan in his

field. Under the agreement, Bryan cannot "become employed by or in any way directly or indirectly render services to any person, firm or corporation engaged in the manufacture and/or sale of any [product remotely competitive with Hall]." Bryan has over thirty years experience in the chemistry field and is sixty-two years of age. The district court is not clearly erroneous in finding that Bryan "would be virtually unemployable in the industry in which he has spent most of his life" if this broad provision is enforced.

### C. Balancing of Hardships

The district court held that the threatened injury to Bryan if Hall enforced the agreement outweighed the threatened harm the preliminary injunction would cause Hall. The district court based its decision on its finding that Hall possessed "few, if any, true trade secrets in the industry involved in this litigation." Hall contends the court's finding is clearly erroneous and argues that the testimony of Hall's president substantiates the fact that Hall does have trade secrets. The court found, however, Cross and Bryan's testimony convincing. Cross, with over thirty years of experience in the industry, testified that "there are no trade secrets in this industry any more," and discussed the equipment, processes, sources, research, pricing and customer solicitation in the industry. Bryan also testified to the lack of trade secrets in the industry. We hold that the district court's finding that Hall possessed few, if any, trade secrets is not clearly erroneous.

Moreover, Ohio law adequately protects Hall and its trade secrets, if any. The Ohio Trade Secrets Act, Ohio Rev.Code Ann. § 1333.51(C) (1992), prohibits the unauthorized use or disclosure of a trade secret and defines "trade secret" as

> the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, or improvement, or any business plans, financial information, . . . which has not been published or disseminated, or otherwise become a matter of general public knowledge.

Ohio Rev.Code Ann. § 1333.51(A)(3). Contrary to Hall's contention, the district court order does not disturb the protection Ohio

law affords. Thus, Hall cannot show harm to it outweighing the harm to Bryan if the injunction issues.

### D. Public Interest

The district court also found that the injunction would not disserve the public interest. Hall does not contest this finding, and we agree that the injunction "will not be adverse to the public interest."

### IV. CROSS EXAMINATION OF CROSS

■ Hall contends that the district court abused its discretion in refusing to allow its counsel a full and fair opportunity to cross-examine Cross. A trial court has broad discretion "to determine the permissible scope of cross-examination and will not be reversed except for clear abuse of that discretion." *United States v. Jones,* 913 F.2d 1552, 1564 (11th Cir.1990). According to Hall, the district court prevented its counsel from inquiring into Cross's testimony that Bryan's raise and promotion were merit-based. Hall's purpose in questioning Cross on this point was to reduce the weight of Cross's testimony that Bryan's first raise in several years was merit-based but held back because of a shortage of funds. Hall's ultimate goal was to convince the court that Bryan's 1986 raise was not merit-based but given in consideration for the agreement.

■ Upon review of the record, it is clear the district court understood Hall's motive, based on the colloquy between Hall's counsel and the court. Hall adequately developed the area of questioning with Cross and no prejudice to Hall resulted. Hall established with Cross that other employees received raises prior to 1986 based on merit. When asked whether Hall gave Bryan a raise during that period even though a raise was not merited, Cross responded "I do not accept that idea." Cross, therefore, rejected Hall's assertion that Bryan did not deserve a raise. The district court did not abuse its discretion in limiting Hall's further cross-examination on this point.

### CONCLUSION

For the reasons stated, we vacate our suspension of the injunction pending appeal and

affirm and reinstate the district court's order granting a preliminary injunction.

AFFIRMED.