**Steven E. NEVEUX, Plaintiff,**

v.

**WEBCRAFT TECHNOLOGIES, INC., a Delaware corporation, and Randy Edgington, a Pennsylvania resident, Defendants.**

**No. 96–CV–70751–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

March 21, 1996.

John E. Berg, Clark, Hill, PC, Detroit, MI, for plaintiff.

Kenneth J. McIntyre, Dickinson, Wright, Moon, Van Dusen, Freeman, Detroit, MI, for defendants.

## OPINION

DUGGAN, District Judge.

Before this Court is plaintiff's motion for a preliminary injunction. Plaintiff asks this Court to enjoin defendants from enforcing a non-competition agreement between plaintiff and defendant Webcraft.

### I. Background

Plaintiff began working for Webcraft in 1988 as a salesman. Before beginning his employment with Webcraft, plaintiff was required to sign a "Non–Disclosure and Non–Competition Agreement." In this agreement, signed by plaintiff on February 9, 1988, plaintiff agreed to the following:

> In order to render effective the foregoing agreement by the Employee relating to Webcraft's trade secrets, the Employee agrees that, following the effective date of the termination of [his] employment with Webcraft, [he] will not ... directly or indirectly, render any services in connection with the manufacture, development, sale or servicing of any product competitive with, or usable for substantially the same purposes as, any product manufactured or sold or in the process of development by Webcraft or, for a period of two years following said termination date, solicit business from or service the accounts of any customer of Webcraft during the two year period preceding said termination date.

See Non–Disclosure and Non–Competition Agreement, ¶ 3.3, attached as ex. B to pl.'s br.

As part of plaintiff's job with Webcraft, plaintiff had to service Chrysler and Chrysler's advertising agency Ross Roy. Plaintiff had a previous relationship with both Chrysler and Ross Roy and was hired by Webcraft, at least in part, upon the recommendation of Chrysler.

Plaintiff successfully worked for Webcraft until he was terminated on November 16, 1995. Plaintiff contends that he was terminated because of his age; Webcraft contends it terminated plaintiff for insubordination.

Specifically, plaintiff is asking this Court, inter alia, to declare the Non–Competition Agreement unenforceable and to allow plaintiff to seek employment with a competitor of Webcraft, Banta Direct Marketing ("Banta"). The employment offer from Banta is contingent upon plaintiff securing a release from his Non–Competition Agreement with Webcraft. Webcraft does not object to plaintiff's employment with Banta and has agreed to release plaintiff from the Non–Competition Agreement with respect to all accounts plaintiff serviced while at Webcraft except for Chrysler and Ross Roy. Webcraft contends that were plaintiff to service these accounts, it is inevitable that plaintiff would improperly use information obtained during his employment with Webcraft in violation of the agreement. Plaintiff denies that he would necessarily use information covered by the agreement.

### II. Discussion

This Court must consider four factors in deciding whether to issue a preliminary injunction:

1. the likelihood of success on the merits;

2. whether the injunction will prevent irreparable injury;

3. whether the injunction will harm others;

4. whether the public interest would be served.

Moltan Co. v. Eagle–Picher Industries, Inc., 55 F.3d 1171, 1175 (6th Cir.1995). None of these four factors is a prerequisite to the issuance of a preliminary injunction; rather, the Court must balance the four factors in

deciding the propriety of a preliminary injunction. *Performance Unlimited v. Questar Publishers, Inc.,* 52 F.3d 1373, 1381 (6th Cir.1995). However, "a plaintiff must *always* demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 104 (6th Cir.1982); *Economou v. Physicians Weight Loss Centers of America,* 756 F.Supp. 1024, 1031 (N.D.Ohio 1991). "In general, the extent a party must demonstrate a substantial likelihood of success varies inversely with the degree of harm the party will suffer absent an injunction." *Cincinnati Sub–Zero Products v. Augustine Medical, Inc.,* 800 F.Supp. 1549, 1557 (S.D.Ohio 1992) (citing *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 538 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979)).

> The moving party must show a strong likelihood of success on the merits if all other factors militate against granting a preliminary injunction. Similarly, the moving party need show less likelihood of success on the merits if the other factors indicate the Court should issue a preliminary injunction.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Grall,* 836 F.Supp. 428, 432 (W.D.Mich. 1993).

■■■ The primary purpose of a preliminary injunction is to maintain the status quo until a decision on the merits can be reached. *See University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Like all equitable remedies, a preliminary injunction will not issue unless the right to relief is clear. *Merrill Lynch,* 836 F.Supp. at 431. "At the preliminary injunction stage, a district court is not required to resolve 'doubtful questions of law or disputed questions of fact.'" *Cincinnati Sub–Zero Products,* 800 F.Supp. at 1557, quoting *International Molders' and Allied Workers' Local Union v. Nelson,* 799 F.2d 547, 551 (9th Cir.1986). In cases, such as here, where plaintiff seeks preliminary injunctive relief not to maintain the status quo but rather to alter it so that he receives essentially all of the relief to which he would be entitled after a successful trial on the

merits, plaintiff must "satisfy an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in [plaintiff's] favor before such an injunction may be issued." *SCFC ILC, Inc., Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991).

*A. Likelihood of success on the merits*

■■■ Plaintiff contends that he is likely to succeed on the merits for essentially two reasons. First plaintiff argues that under New Jersey law the agreement itself is unenforceable. Second, plaintiff contends that Webcraft materially breached plaintiff's employment contract and therefore cannot enforce this contract. The Court will address each of these in turn.

*1. Enforceability of Non–Competition Agreement under New Jersey law*

■■■ The Non–Competition Agreement states that New Jersey law applies. Under New Jersey law, "restrictive covenants which interfere with an individuals ability to pursue her vocation after leaving a particular employer are disfavored, although not *per se* unenforceable." *Webcraft Technologies, Inc. v. McCaw,* 674 F.Supp. 1039, 1044 (S.D.N.Y.1987) (*citing Solari Industries, Inc. v. Malady,* 55 N.J. 571, 264 A.2d 53 (1970)). "[A new jersey] court will find 'a non-competition covenant reasonable if it' simply protects the legitimate interests of the employer, imposes no undue hardship on the employee and is not injurious to the public." *Ingersoll–Rand Co. v. Ciavatta,* 110 N.J. 609, 542 A.2d 879 (1988). New Jersey courts expressly "recognize as legitimate the employer's interest in protecting trade secrets, confidential information, and customer relations." *Id.* at 627, 542 A.2d 879.

The district court for the Southern District of New York had the opportunity to review the reasonableness of this precise agreement under New Jersey law. *McCaw,* 674 F.Supp. at 1043–48. That court, in denying a preliminary injunction, held the Non–Competition Clause reasonable and enforceable under both New Jersey law and the more restrictive law of New York. Based on the reasoning of the court in *McCaw,* this Court does not conclude, at this time, that the present

agreement is unreasonable and unenforceable under New Jersey law.

The Court notes that the proposed agreement with the prospective employer, Banta, requires that plaintiff sign their "standard intellectual property agreement" (ex. A to pl.'s supp. br.) and that in a letter dated February 14, 1996 to plaintiff, Banta's executive vice-president refused to allow plaintiff to disclose to Webcraft a description of duties and responsibilities asserting, "information specific to territory, scope of duties, customers and prospects is proprietary information." *See* ex. B to pl.'s supp. br. It therefore appears to this Court that "confidentiality agreements" are common in the industry. Furthermore, the fact that Banta is reluctant to hire plaintiff without plaintiff being released by Webcraft from the "confidentiality agreement" that he signed with them, suggests that Banta may be concerned that plaintiff's employment with it could involve a violation of the confidentiality agreement he signed with Webcraft.

Based on the information presented to date, the Court is not prepared to conclude that plaintiff's employment with Banta would not involve a violation of the confidentiality agreement. The Court is not required to resolve questions of fact in determining whether a preliminary injunction should issue.

### 2. Breach of employment contract

Plaintiff contends that defendant breached the employment contract and thus the "confidentiality" and "non-competition" clause is unenforceable. This Court finds a question of fact to exist with respect to whether the plaintiff's employment contract was breached by Webcraft in failing to pay commissions allegedly due him. In addition, a question of fact exists as to whether Webcraft indicated the Non–Competition Agreement would only be enforced if plaintiff voluntarily left Webcraft. This Court declines to resolve these questions of fact at the preliminary injunction stage.

### B. Irreparable injury to plaintiff

Plaintiff contends that the denial of a preliminary injunction will lead to irreparable harm in that plaintiff would be virtually unemployable in an industry where he spent most of his life. In support of his claim for irreparable injury, plaintiff cites the Eleventh Circuit's opinion in *Bryan v. Hall Chemical Co.*, 993 F.2d 831 (11th Cir.1993). The plaintiff in *Bryan*, like the plaintiff here, was a salesman with considerable experience in his industry. Also like the present case, the plaintiff in *Bryan* signed an agreement not to compete after termination of employment. The district court, in deciding to issue a preliminary injunction, found irreparable injury in that Bryan "would be virtually unemployable in the industry in which he has spent most of his life" if the agreement not to compete were enforced. *Id.* at 836. The Court of Appeals held that such a finding by the district court was not "clearly erroneous." *Id.*

This Court finds that plaintiff has not met his burden of persuading this Court that he would suffer irreparable injury. Unlike the *Bryan* plaintiff, plaintiff in this case is employable within his industry. Webcraft does not object to plaintiff working for Banta, and presumably anyone else, except that plaintiff cannot call upon Chrysler for two years. Plaintiff has produced no evidence that it would be "virtually impossible" for plaintiff to find any work which would not require his servicing Chrysler. Furthermore, plaintiff's counsel acknowledged at oral argument that Webcraft has a contract with Chrysler through the end of 1996 and thus plaintiff, even if permitted to contact Chrysler, would not be effecting any sales to Chrysler in 1996. It is therefore difficult for this Court to believe that by denying a preliminary injunction, plaintiff will suffer "irreparable harm" within the next six months.[1] Moreover, despite the fact that it appears that plaintiff's current job offer is contingent upon his ability to sell to Chrysler, this Court believes that plaintiff has adequate remedies at law in the form of damages.

**1.** This case is scheduled for trial in the Court's September/October, 1996 trial term.

### C. Harm to others

In contrast to the harm that would befall plaintiff, the risk of injury to defendant Webcraft is likely great and irreparable. Webcraft contends that it would be virtually impossible for plaintiff to service Chrysler and Ross Roy for Banta without using confidential information obtained as a result of his employment with Webcraft. Should Webcraft's contention prove to be true, plaintiff's working for Banta on the Chrysler account would lead to irreparable harm to Webcraft because it would necessarily involve the divulging of Webcraft's trade secrets, a harm that might be difficult to quantify.

### D. Public interest

Plaintiff contends that to enforce the contract against him may lead to a point where he would become a public charge. This contention is far too speculative. Instead, this Court finds that the public interest lies in preserving the enforceability of contracts. *See Uniroyal Goodrich Tire Co. v. Hudson,* 873 F.Supp. 1037, 1049 (E.D.Mich.1994).

### III. Conclusion

For the reasons set forth above, plaintiff has failed to persuade this Court that he meets the criteria required for issuing the extraordinary remedy of a preliminary injunction. Plaintiff's motion for a preliminary injunction shall therefore be denied.

An Order consistent with this Opinion shall issue forthwith.